UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BANK OF AMERICA, N.A., | ) |
| Plaintiff, | ) |
| v. | ) No. 13 C 1168 |
| | ) Chief Judge Rubén Castillo |
| OBERMAN, TIVOLI & PICKERT, INC., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Bank of America, N.A. ("BOA") brings this action for breach of contract against Defendant Oberman, Tivoli & Pickert, Inc. ("OTP"). Presently before the Court is OTP's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, this motion is denied.

## RELEVANT FACTS

BOA is a national banking association organized in Delaware with its principal place of business in Charlotte, North Carolina. (R. 1, Compl. ¶ 1.) OTP is a California corporation with its principal place of business in Los Angeles, California. (*Id.* ¶ 4.) On or around May 6, 2003, Merrill Lynch Business Financial Services, Inc. ("MLBFS") and OTP entered into a WCMA[1] Loan and Security Agreement (the "Loan Agreement"). (*Id.* ¶ 5.) As relevant here, Section 3.7(d) of the Loan Agreement states:

---

[1] The Loan Agreement details the line of credit extended by MLBFS under the Working Capital Management Account Program. (R. 1-1, Ex. A, Loan Agreement at 1.)

> Customer shall pay or reimburse MLBFS for . . . (iii) all fees and out-of-pocket expenses (including attorneys' fees and legal expenses) incurred by MLBFS in connection with the preparation, execution, administration, collection, enforcement, protection, waiver or amendment of this Loan Agreement, the other Loan Documents and such other instruments or documents, and the rights and remedies of MLBFS thereunder and all other matters in connection therewith.

(R. 1-1, Ex. A, Loan Agreement at 11, § 3.7(d).) "Customer" is defined as OTP's predecessor, Oberman, Tivoli, Miller & Pickert, Inc. (R. 1-1, Ex. A, Loan Agreement at 1.) Following the October 1, 2010 merger between BOA and Merrill Lynch Commercial Finance Corp., BOA became the successor in interest to all of MLBFS's rights and remedies under the Loan Agreement. (R. 1, Compl. ¶¶ 2, 6.) The line of credit in the Loan Agreement was renewed after the first year and subsequently renewed again, with the new maturity date set to June 30, 2006. (*Id.* ¶¶ 11-12.) In June 2006, BOA decided not to renew the line of credit pursuant to a provision in the Loan Agreement giving BOA sole discretion to renew. (*Id.* ¶ 13-14.)

On or around December 31, 2007, OTP filed a complaint in California state court against BOA and Merrill Lynch Pierce Fenner & Smith, Inc. ("Merrill Lynch") asserting claims arising out of the Loan Agreement. (*Id.* ¶ 15.) BOA moved to dismiss the case based on the forum selection clause in the Loan Agreement; the California court granted the motion on March 2, 2009. (*Id.* ¶¶ 16-17.) Around August 15, 2009, OTP filed a substantially identical suit against BOA and Merrill Lynch in the Circuit Court of Cook County, Illinois asserting breach of contract, fraud, and breach of fiduciary duty. (*Id.* ¶ 18.) BOA and Merrill Lynch moved to dismiss the complaint pursuant to 735 Ill. Comp. Stat. 5/2-619.1.[2] (*Id.* ¶ 19.) On January 27,

---

[2] 735 Ill. Comp. Stat. 5/2-619.1 is an Illinois statute that allows a party to combine motions contending that the complaint fails to state a claim and admitting the legal sufficiency of the complaint but raising an affirmative defense that allegedly defeats the complaint. *Simmons v. Campion*, 991 N.E.2d 924, 929 (Ill. App. Ct. 3d Dist. 2013).

2010, the Illinois court granted the motion and dismissed the complaint in its entirety, granting OTP leave to file an amended complaint. (*Id.*) On April 23, 2010, OTP filed a nearly identical amended complaint, and BOA and Merrill Lynch filed a motion to dismiss the complaint for failure to state a claim pursuant to 735 Ill Comp. Stat. 5/2-615. (*Id.* ¶¶ 20-21.) The court again dismissed the complaint in its entirety, dismissing all but the fraud claims with prejudice. (*Id.* ¶ 22.) On October 4, 2010, OTP filed a second amended complaint, reasserting its fraud claims in addition to its breach of fiduciary duty claims and breach of contract claims that had previously been dismissed with prejudice. (*Id.* ¶¶ 23-25.) The Illinois court yet again granted BOA's and Merrill Lynch's motion to dismiss the complaint, emphasizing that OTP's breach of fiduciary duty and breach of contract claims had previously been dismissed with prejudice, and granted OTP another chance to adequately allege its fraud claims. (*Id.* ¶¶ 26-27.) On April 4, 2011, OTP filed its third amended complaint, alleging a single count of fraud against each BOA and Merrill Lynch. (*Id.* ¶ 28.) The Illinois court again granted BOA's motion to dismiss, and it dismissed the entire complaint with prejudice. (*Id.* ¶¶ 28-30.)

Undeterred, OTP appealed the circuit court's dismissal of its third amended complaint, and the Illinois Court of Appeals for the First District affirmed the lower court's dismissal on December 31, 2012. (*Id.* ¶¶ 31-32.) BOA alleges that it incurred $125,322.73 in attorneys' fees and costs to defend against the California suit and $138,221.15 in attorneys' fees and costs to defend against the Illinois suit and subsequent appeal. (*Id.* ¶¶ 33-35.) On February 7, 2012, BOA sent a demand letter to OTP demanding reimbursement for the attorneys' fees pursuant to Section 3.7(d)(iii) of the Loan Agreement. (*Id.* ¶ 37.) On January 16, 2013, BOA sent a second demand letter. (*Id.* ¶ 38.) To date, OTP has failed to reimburse BOA the requested attorneys' fees and costs. (*Id.* ¶ 39.) BOA now seeks to recover the attorneys' fees and costs incurred in

3

connection with the defense of the California and Illinois suits, which amount to a total of $263,543.88, and the ongoing fees incurred attempting to enforce its rights under the Loan Agreement. (*Id.* ¶¶ 45-46.)

## PROCEDURAL HISTORY

BOA initiated the present action on February 12, 2013. (R. 1, Compl.) The one-count complaint alleges that OTP breached its obligations under the Loan Agreement by refusing to reimburse BOA for the attorneys' fees and costs BOA incurred defending against OTP's suits. (*Id.* ¶ 43.) On April 16, 2013, OTP moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Section 3.7(d) of the Loan Agreement is unenforceable because it is ambiguous, unreasonable, and applicable only to third party claims. (R. 9, Def.'s Mot.) BOA filed its response to OTP's motion to dismiss on May 8, 2013, (R. 13, Pl.'s Resp.), and OTP replied to BOA's response on May 22, 2013. (R. 15, Def.'s Reply.)

## LEGAL STANDARDS

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). When reviewing a Rule 12(b)(6) motion to dismiss, the Court construes the complaint in the light most favorable to the nonmoving party, accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in the non-movant's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Pursuant to Rule 8(a)(2), a complaint must contain "a 'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Id.* (quoting Fed. R. Civ. P. 8(a)(2) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Detailed factual allegations" are not required, but the complaint "must contain sufficient factual

4

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility in this context does not imply that a court "should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Rather, to survive a motion to dismiss under Rule 12(b)(6), "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Id.*

A document that is attached to a pleading "is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Thus, when ruling on a Rule 12(b)(6) motion to dismiss, a court must "consider documents attached to the complaint as part of the complaint itself." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (citing *Int'l Mktg., Ltd. v. Archer-Daniels-Midland Co.*, 192 F.3d 724, 729 (7th Cir. 1999)). "Such documents may permit the court to determine that the plaintiff is not entitled to judgment" in his favor. *Id.* (citing *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009)).

## ANALYSIS

### I. Jurisdiction and applicable law

BOA avers that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, (R. 1, Compl. ¶ 7), which requires diversity of citizenship and an amount in controversy that exceeds $75,000. BOA is a Delaware corporation with its principal place of business located in North Carolina, (*id.* ¶ 1); OTP is a California corporation with its principal place of business located in California, (*id.* ¶ 4). The amount in controversy, for purposes of satisfying the jurisdictional requirement, must be "exclusive of interest and costs." 28 U.S.C. 1332(a). When attorneys' fees that have already been incurred are sought as part of the underlying claim, however, they are

properly considered as part of the amount in controversy. *Mo. State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933). Here, BOA asserts a contractual right to attorneys' fees that it incurred before filing the instant suit. Thus, the attorneys' fees BOA seeks reimbursement for in this action—which exceed $75,000.00—are properly considered as part of the amount in controversy, and this Court has subject matter jurisdiction to decide this case on the merits.

A federal court sitting in diversity applies state substantive law and federal procedural law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 80 (1938). The *Erie* doctrine extends to conflict of laws principles and requires the Court to apply the conflict of laws rules of the forum state to determine which state's substantive law applies. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). Courts are to "honor reasonable choice-of-law stipulations in contract cases," *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009), however, and are "not [to] worry about conflict of laws unless the parties disagree on which state's law applies." *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 427 (7th Cir. 1991). The Loan Agreement stipulates that it "shall be governed in all respects by the laws of the State of Illinois." (R. 1-1, Ex. A, Loan Agreement at 11, § 3.7(i).) Additionally, both parties cite Illinois law in their submissions to the Court. (*See* R. 9, Def.'s Mot.; R. 13, Pl.'s Resp.) Accordingly, the Court will apply Illinois contract law to determine whether BOA has sufficiently stated a claim for breach of contract.

## II. Whether Section 3.7(d) is ambiguous

OTP first argues that Section 3.7(d) is unenforceable because it is ambiguous. (R. 9, Def.'s Mot. at 2.) To be enforceable, the terms of a contract "must be clear, certain and free from ambiguity and doubt." *Morey v. Hoffman*, 145 N.E.2d 644, 647 (Ill. 1957). Whether a contract is ambiguous is a matter of law. *Quake Constr., Inc. v. Am. Airlines, Inc.*, 565 N.E.2d

6

990, 994 (Ill. 1990). If the language of the contract is susceptible to more than one meaning, it is ambiguous. *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011). If the words in the contract are clear and unambiguous, however, "they must be given their plain, ordinary and popular meaning." *Id.* OTP argues that the terms BOA relies on in Section 3.7(d) are not defined and are susceptible to more than one meaning. (R. 9, Def.'s Mot. at 3.) Specifically, OTP argues that the language "all fees and out of pocket expenses" in Section 3.7(d)(iii) allows BOA to "pick and choose what fees and out of pocket expenses" it requests payment for from OTP. (*Id.*)

Section 3.7(d) has three subsections, but all of them are introduced by the common language at the beginning of Section 3.7(d), which is entitled "Fees, Expenses and Taxes": "Customer shall pay or reimburse MLBFS for . . .". The Court finds that language unambiguous and not susceptible to any interpretation other than OTP's agreement to pay MLBFS, now BOA. Subsection (iii) of Section 3.7(d), which is at issue here, continues the sentence:

> all fees and out-of-pocket expenses (including attorneys' fees and legal expenses) incurred by MLBFS in connection with the preparation, execution, administration, collection, enforcement, protection, waiver or amendment of this Loan Agreement, the other Loan Documents and such other instruments or documents, and the rights and remedies of MLBFS thereunder and all other matters in connection therewith.

(R. 1-1, Ex. A, Loan Agreement at 11, § 3.7(d)(iii).) The Court finds this section unambiguous as well, at least insofar as is it applies to the present dispute. The Court cannot find within the above language some interpretation that does not require OTP to reimburse BOA for the attorneys' fees and legal expenses it incurred in connection with enforcing the Loan Agreement, specifically by defending suits brought by OTP in court. OTP argues that Section 3.7(d)(iii) only entitles BOA to collect attorneys' fees in connection with the other documents that were filed and recorded. (R. 15, Def.'s Reply at 2.) This tortured reading eliminates the explicit inclusion

7

of "this Loan Agreement" within the section. The Court concludes that the plain meaning of Section 3.7(d)(iii) is not susceptible to more than one interpretation and thus is not unenforceable on the grounds of ambiguity.

Alternatively, even if the Court were to find Section 3.7(d) to be ambiguous, the Court would not have grounds to dismiss the complaint. If a court determines that a contract is ambiguous, parol evidence is admitted to determine the parties' intent, and the interpretation of the language becomes a question of fact that the court cannot properly determine on a motion to dismiss. *Quake Constr.*, 565 N.E.2d at 994. Thus, if OTP had prevailed in convincing this Court that the provision is ambiguous as a matter of the law, the next step would be to begin discovery and proceed before a fact finder to determine the meaning of Section 3.7(d)—not to dismiss the suit. Accordingly, the Court declines to dismiss the complaint on the grounds of ambiguity.

## III. Whether Section 3.7(d) is unreasonable

OTP next argues that the attorneys' fee provision in the Loan Agreement is unreasonable. (R. 9, Def.'s Mot. at 4.) OTP contends that the provision is unreasonably broad because it does not state that the attorneys' fees must be reasonable and because it does not limit BOA to collecting attorneys' fees only when it prevails. (*Id.* at 4-5.) In Illinois, the unsuccessful party in a lawsuit is not responsible for the prevailing party's attorneys' fees unless there is a contract provision altering the general rule. *Powers v. Rockford Stop-N-Go, Inc.*, 761 N.E.2d 237, 240 (Ill. App. Ct. 2d Dist. 2001). Any contract provisions regarding attorneys' fees "should be strictly construed and enforced at the discretion of the trial court." *Id.* By "strictly construing" the contract, the Court must "construe[ ] it to mean nothing more—but also nothing less—than the letter of the text." *Erlenbush v. Largent*, 819 N.E.2d 1186, 1189 (Ill. App. Ct. 4th Dist. 2004). When attorneys' fees are specifically authorized by the contract, however, it is an "error

8

for the trial court to fail to provide for them." *Myers v. Popp Enterprises, Inc.*, 576 N.E.2d 452, 457 (Ill. App. Ct. 2d Dist. 1991). If parties have agreed to shift the obligation for attorneys' fees, the court should use its discretion to "award reasonable attorney fees according to the specific provisions of the contract." *Brzozowski v. N. Trust Co.*, 618 N.E.2d 405, 411 (Ill. App. Ct. 1st Dist. 1993).

In support of its position that Illinois public policy concerns do not allow for the enforcement of a provision that would allow the breaching party to collect attorneys' fees, OTP relies on an unpublished Illinois appellate court decision, *Atlantis Products, Inc. v. Meridian Fence & Security, L.P.*, 2012 IL App (2d) 110521-U, at *9 (Ill. App. Ct. 2d Dist. Mar. 22, 2012). (R. 9, Def.'s Mot. at 4-5.) In *Atlantis Products*, however, the plaintiff sought to enforce the attorneys' fees provision even though it had breached the material terms of the contract. *Id.* The Illinois appellate court held that to allow a non-prevailing party to collect attorneys' fees would be contrary to public policy, and it distinguished its holding from cases in which the non-breaching parties were allowed to collect attorneys' fees. *Id.* (citing *Bright Horizons Children's Centers, LLC v. Riverway Midwest II, LLC*, 931 N.E.2d 780, 798 (Ill. App. Ct. 1st Dist. 2010); *Peleton, Inc. v. McGivern's Inc.*, 873 N.E.2d 989, 995 (Ill. App. Ct. 1st Dist. 2007); *Erlenbush*, 819 N.E.2d at 1190; *Powers*, 761 N.E.2d at 240; *Myers*, 576 N.E.2d at 457). In each of the cases the court distinguished in *Atlantis*, prevailing parties were awarded attorneys' fees due to specific contractual provisions allowing for fee-shifting, such as the provision in Section 3.7(d).

OTP argues that the absence of language limiting BOA's ability to recover to situations in which it is the prevailing party in Section 3.7(d) would allow BOA to recover if it did not prevail and demonstrates the unreasonability of the provision. (R. 15, Def.'s Reply at 3-4.) OTP does not provide any caselaw indicating that an attorneys' fees provision must have "prevailing

party" language to be enforceable. To the contrary, Illinois courts have enforced attorneys' fees provisions that do not contain this language. *See, e.g.*, *Daiwa Bank, Ltd. v. La Salle Nat. Trust, N.A.*, 593 N.E.2d 105, 110 (1992) (in a mortgage: "Mortgagor shall pay . . . reasonable attorneys' fees . . . incurred by Lender in connection with any of the following: (a) The preparation, execution, delivery and performance of the Loan Instruments; (b) The funding of the Loan; . . . (d) Any court or administrative proceeding or other action undertaken by Lender to enforce any remedy . . ."); *Wanderer v. Plainfield Carton Corp.*, 351 N.E.2d 630, 638 (Ill. App. Ct. 3d Dist. 1976) (in a lease agreement: "Lessee will pay and discharge all reasonable costs, attorneys fees and expenses that may be incurred by Lessor, in enforcing the covenants and agreements of this Lease, and all covenants and agreements herein contained."). An Illinois appellate court recently stated that because "attorney fees may only be awarded to a prevailing party," it is appropriate to infer that fee-shifting provisions only provide for an award of attorneys' fees to a prevailing party, regardless of whether the plain language of the provision expressly provides as much. *City of Harvard v. Elvis J. Henson Trust*, 2012 IL App (2d) 120091-U, at ¶ 21 (Ill. App. Ct. 2d Dist. Sept. 18, 2012) (quoting *Powers*, 761 N.E.2d at 241) (finding the following attorneys' fee provision valid but inapplicable because the City did not prevail: "In the event the City is required to incur legal expenses to enforce the terms of this Agreement against [defendants], [defendants] shall be responsible to reimburse the City for all reasonable attorneys fees incurred relative to such enforcement action.").

This Court is charged with using its discretion to award reasonable attorneys' fees. *See Brzozowski*, 618 N.E.2d at 411; *LaHood v. Couri*, 603 N.E.2d 1165, 1170 (Ill. App. Ct. 3d Dist. 1992). Accordingly, the Court is untroubled by the absence of language explicitly limiting BOA's recovery to "reasonable" attorneys' fees or to when it is the prevailing party. Although it

10

would be unreasonable for the Court to award attorneys' fees to a non-prevailing party, *see Atlantis Prods.*, 2012 IL App (2d) 110521-U, at *9; *Powers*, 761 N.E.2d at 241, the failure of a fee-shifting provision to explicitly limit the award of attorneys' fees to a prevailing party does not render the provision unreasonable and unenforceable. OTP has failed to provide any grounds upon which the fee-shifting provision in Section 3.7(d) is unreasonable, and the Court declines to dismiss the complaint on the grounds that Section 3.7(d) is unreasonable.

IV.     **Whether Section 3.7(d) applies to the instant case**

OTP next argues that, read within the context of the entire Loan Agreement, Section 3.7(d) applies only to third-party claims and does not allow first-party claims for reimbursement. (R. 9, Def.'s Mot. at 5.) "A court must construe the meaning of a contract by examining the language and may not interpret the contract in a way contrary to the plain and obvious meaning of its terms." *Dean Mgmt., Inc. v. TBS Constr., Inc.*, 790 N.E.2d 934, 939 (Ill. App. Ct. 2d Dist. 2003). "Furthermore, the court must place the meanings of words within the context of the contract as a whole." *Id.* "A court will neither add language or matters to a contract about which the instrument itself is silent, nor add words or terms to an agreement to change the plain meaning" of the agreement. *Id.* (quoting *Sheehy v. Sheehy*, 702 N.E.2d 200, 204 (Ill. App. Ct. 1st Dist. 1998)).

Section 3.5 of the Loan Agreement refers to "Events of Default," and Section 3.6 refers to "Remedies." (R. 1-1, Ex. A, Loan Agreement at 8-9, §§ 3.5, 3.6.) Consequently, OTP argues, Section 3.7, entitled "Miscellaneous," refers to "fees and expenses from third party claims," not from proceedings in connection with events of default. (R. 9, Def.'s Mot. at 5.) Sections 3.5 and 3.6 do pertain to the first-party relationship between BOA and OTP, but there is no reason to interpret these sections as encompassing the totality of the scope of the parties' mutual

obligations. Neither Section 3.5 or Section 3.6 provide for the recovery of attorneys' fees, and Section 3.7(d)(iii) appears to be the only fee-shifting provision in the Loan Agreement. In addition, other portions of the contract outside Sections 3.5 and 3.6 clearly pertain to the BOA/OTP relationship. For example, Section 3.7(c) describes the methods by which BOA and OTP agreed to communicate. (R. 1-1, Ex. A, Loan Agreement at 11, § 3.7(c).) Thus, in the context of the contract as a whole, it is clear that Sections 3.5 and 3.6 do not alone define all the rights and obligations between BOA and OTP, and that Section 3.7 does not exclusively refer to rights and obligations as to third parties. OTP's conclusory argument to this effect is not well-developed, nor is it supported by caselaw.

In addition, OTP's contention that the Section 3.7(d)(iii) applies only to attorneys' fees incurred in third-party litigation is unsupported by the plain text of the provision itself. Section 3.7(d) begins: "*Customer* shall pay or reimburse . . ." (R. 1-1, Ex. A, Loan Agreement at 11, § 3.7(d)) (emphasis added). "Customer" means OTP here, and thus the plain meaning of Section 3.7(d)(iii) is that it allows BOA to seek reimbursement for attorneys' fees directly from OTP. From both its express language and its context within the structure of the contract, the Court concludes that Section 3.7(d) does not apply to only third-party litigation and that it provides a basis upon which BOA may seek reimbursement from OTP.

Seeking to avoid this result, OTP argues that BOA should not be allowed to collect attorneys' fees because BOA did not initiate the underlying litigation. (R. 15, Def.'s Reply at 4-5). OTP relies on *Housing Authority of Champaign County v. Lyles*, 918 N.E.2d 1276 (Ill. App. Ct. 4th Dist. 2009), to support its contention that BOA cannot recover attorneys' fees because Section 3.7(d) does not provide for the recovery of attorneys' fees "for defending the Loan Agreement." (*Id.* at 5.) The Illinois appellate court in *Lyles* held that the defendant was not

entitled to an award of attorneys' fees pursuant to a contract provision providing that the prevailing party "may recover all costs and reasonable attorney fees incurred in enforcing this lease" because the defendant did not sue to enforce the lease, only defended against the plaintiff's suit. *Lyles*, 918 N.E.2d at 1279-80 (internal alterations omitted). The court found that the ordinary meaning of the word "enforce" required affirmative action and that the contract provision thus only provided for attorneys' fees for a party who "was suing to compel or make effective the covenants of the lease." *Id.* at 1279. OTP urges this Court to likewise find that BOA is not entitled to attorneys' fees for its defense against OTP's suits.

The key distinction between the *Lyles* and the present case is that the attorneys' fees provision in the Loan Agreement does not limit BOA's recovery to costs incurred in "enforcing" the contract. Instead, Section 3.7(d) specifically allows for the recovery of attorneys' fees and costs incurred "in connection with the preparation, execution, administration, collection, enforcement, protection, waiver or amendment" of the Loan Agreement. When a contract fails to explicitly define its terms, "the court must give the contractual language its common and generally accepted meaning." *Dean Mgmt.*, 790 N.E.2d at 939. Black's Law Dictionary unhelpfully defines "protection" as "The act of protecting," without providing a definition for "protect" or "protecting." Black's Law Dictionary (9th Ed. 2009). The Oxford English Dictionary defines "protect" as "To defend or guard from danger or injury; to support or assist against hostile or inimical action; to preserve from attack, persecution, harassment, etc." (OED 3d Ed. 2007). The Court concludes that defending against OTP's suits constitutes protection of the Loan Agreement within the meaning of Section 3.7(d). Thus, the plain language of Section 3.7(d) does not preclude BOA's recovery of the attorneys' fees at issue here.

## CONCLUSION

For the reasons set forth above, OTP's 12(b)(6) motion to dismiss for failure to state a claim (R. 9) is DENIED. The parties are directed to reevaluate their settlement positions in light of this opinion and to exhaust all efforts to settle this case. The parties shall appear for a status hearing on February 18, 2014 at 9:45 a.m.

ENTERED: _____
Chief Judge Rubén Castillo
United States District Court

Dated: January 22, 2014